UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  08-80075-CIV-MARRA/JOHNSON

HANOVER SPECIALTIES, INC.,
a New York corporation,

       Plaintiff,

vs.

PLAYMAKER SERVICES LLC, a Florida
corporation; JOEL B. MAXWELL, an individual;
MARGIE MAXWELL, an individual;
KERRY THIESSEN, an individual; and
ADVENTURE PLAYGROUNDS, INC., a
Florida corporation,

       Defendants.

_____/

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court on Plaintiff's' Motion for Summary Judgment and Incorporated Memorandum of Law (DE 38), filed December 3, 2008.  Defendant Kerry Thiessen filed a Response (DE 40) on January 5, 2009.  The deadline for Plaintiff to file a reply to Thiessen's response has passed and no reply was filed.  Defendants Playmaker Services, LLC and Adventure Playgrounds, Inc. did not file responses to the summary judgment motion. The action has been stayed against Defendants Joel B. Maxwell and Margie Maxwell on the basis of their filing of a suggestion of bankruptcy  (DE 41/42).   The Court has reviewed the Complaint, the motion, the entire file in this case, and is otherwise duly advised in the premises.

1

**Background**

Plaintiff, a seller and installer of a cushioned flooring system for playgrounds made from recycled rubber known as Vitriturf®, brought claims against Playmaker for account stated, open account, breach of contract, unjust enrichment, and quantum meruit (Counts I-V);  against Kerry Thiessen for fraudulent inducement (Count VI); against Joel Maxwell for fraudulent inducement (Count VII); against Joel Maxwell and Playmaker for violation of Fla. Stat. § 608.4228 (Count VIII); against Joel Maxwell, Margie Maxwell, and Adventure Playgrounds for fraudulent transfers (Count IX); against Joel Maxwell for breach of fiduciary duty (Count X); and against Adventure Playgrounds for successor liability (Count XI).[1] (See Am. Compl., DE 21).  Plaintiff alleges that Playmaker, a company which sells and installs playground equipment, owes it $179,640.50 for labor and materials due under Plaintiff's invoices for work on Playmaker's projects. (Am. Compl. ¶¶ 32-67).  Plaintiff alleges that Kerry Thiessen ("Thiessen"), an employee of Playmaker and Adventure Playgrounds, fraudulently induced Plaintiff's representative, Steve Noskin ("Noskin") to enter into additional business transactions with Playmaker and to continue to work on various projects for Playmaker.  (Compl. ¶¶ 34-47).

**Plaintiff's Request For Admissions**

By way of this motion, Plaintiff moves under Federal Rules of Civil Procedure 36 and 56 to deem admitted its Request for Admissions to Defendant Playmaker Services LLC (DE 39-3), and for summary judgment based, in part, on such admissions.  Plaintiff served its Request for

---

[1] This action has been stayed as to Joel B. Maxwell and Margie Maxwell. See DE 42. Therefore, the Court is unable to rule on the summary judgment motion as to Counts VII, VIII, IX, X and XI as they seek recovery from the Maxwells and/or are inextricably intertwined with Plaintiff's allegations against the Maxwells.

Admissions to Playmaker on August 29, 2008.  Playmaker did not respond.  <u>See</u> DE 39-3.  As a result of Playmaker's failure to respond, each of the facts stated in the Request For Admissions is deemed admitted.  Therefore, for purposes of this motion, the facts are conclusively established as to Defendant Playmaker.  Fed.R.Civ.P. 36(a); <u>see also</u> <u>United States v. 2204 Barbara Lane</u>, 960 F.2d 126, 129-30 (11th Cir. 1992) (affirming a summary judgment order based on deemed admissions); <u>Blue Seas Music, Inc. v. Fitness Surveys, Inc.</u>, 831 F.Supp. 863, 864 (N.D. Ga. 1993).

**Statement of Undisputed Facts as to Defendants Playmaker and Adventure Playgrounds**

Neither Defendant Playmaker Services, LLC nor Defendant Adventure Playgrounds, Inc. responded to Plaintiffs' motion for summary judgment.  Thus, these two Defendants failed to controvert the Statement of Undisputed Facts set forth in Plaintiffs' summary judgment motion. Therefore, under Local Rule 7.5 D, all material facts relevant to the claims against Playmaker and Adventure Playgrounds set forth in the Plaintiffs' motion will be deemed admitted, provided that the Court finds that the movant's statement is supported by evidence in the record.

**Material Facts**

The facts, as culled from  affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in a light most favorable to Defendants, for the purpose of this motion, are as follows:

1. Plaintiff supplies and installs a cushioned flooring system for playgrounds made from recycled rubber known as Vitriturf®. (Exh. 1, Affidavit of Steve Noskin at ¶ 2) (hereinafter "Noskin Aff.").

2. Over a period of time, Plaintiff had a business relationship with Playmaker, a company

which sold and installed playground equipment.  Plaintiff provided labor and materials to Playmaker for various projects, and Playmaker purchased Vitriturf® products and installation services from Plaintiff.  During the course of the business relationship between Plaintiff and Playmaker, Playmaker did business as "WayCool Playgrounds." (Noskin Aff. at ¶ 3).

3.  On or about August 31, 2007, Playmaker ordered goods and services from Plaintiff for a project to be installed at Coral Springs ("the Coral Springs Project").  Plaintiff commenced the Coral Springs Project on or about November 26, 2007, provided all goods and services ordered by Playmaker, completed the Coral Springs Project, and rendered an invoice to Playmaker for the project in the amount of $83,071.70 for the Coral Springs Project. (Noskin Aff. at ¶ 7).

4.  Playmaker received payment in full from its customer on the Coral Springs project in the amount of $128,137.34 and deposited the payment into its operating account on or about December 31, 2007.  See Plaintiff's Request for Admission to Playmaker, DE 39-3 (hereinafter "RFA") at ¶¶ 7-9).

5.  On or about September 6, 2007, Playmaker ordered goods and services from Plaintiff for a project to be installed in Hialeah (the "Hialeah Project").  At Playmaker's request, Plaintiff provided the goods and services ordered by Playmaker, completed the Hialeah Project on or about October 29, 2007, and rendered an Invoice to Playmaker for the project in the amount of $27,475.00.  Playmaker owes Plaintiff an outstanding balance in the amount of $27,475.00 on this invoice for the Hialeah Project.  (Noskin Aff. at ¶ 8).

6. Playmaker received payment in full from its customer on the Hialeah Project in the amount of $59,314.86 and deposited the payment into its operating account on or about November 5, 2007.  (RFA at ¶¶ 10-12).

7. On or about September 6, 2007, Playmaker also ordered goods and services from Plaintiff for a project to be installed at Centex Destination Properties (the "Centex Project"). At Playmaker's request, Plaintiff provided the goods and services ordered by Playmaker, completed the Centex Project on or about November 6, 2007, and rendered an invoice for the project in the amount of $6,380.00. (Noskin Aff. at ¶ 9). Playmaker owes Plaintiff an outstanding balance in the amount of $6,380.00 on the invoice for the Centex Project. Id.

8. Playmaker received payment in full from its customer on the Centex project in the amount of $8,200.50 and deposited the payment into its operating account on or about November 27, 2007. (RFA at ¶¶ 1-3).

9. On or about October 19, 2007, Playmaker ordered goods and services from Plaintiff for a project to be installed at Coconut Grove Montessori School (the "Coconut Grove Project"). At Playmaker's request, Plaintiff provided the goods and services ordered by Playmaker, completed the Coconut Grove Project on or about October 31, 2007, and rendered an invoice for the project in the amount of $23,324.80. (Noskin Aff. at ¶ 10, Ex. H). Playmaker owes Plaintiff an outstanding balance in the amount of $23,324.80 for the Coconut Grove Project. Id.

10. Playmaker received payment in full from its customer on the Coconut Grove Project in the amount of $34,637.63 and deposited the payment into its operating account on or about October 1, 2007. (RFA at ¶¶ 13-15).

11. On or about December 5, 2007, Playmaker asked Plaintiff to provide goods and services for a project to be installed in a showroom (the "Showroom Project"). Plaintiff provided the goods and services and completed the Showroom Project on or about December 11, 2007. (Noskin Aff. at ¶ 12).

12.  On or about December 6, 2007, Playmaker ordered goods and services from Plaintiff to be installed at Grace Lutheran Early Childhood Center (the "Grace Lutheran Project").  At Playmaker's request, Plaintiff provided the goods and services ordered by Playmaker, completed the Grace Lutheran Project on or about December 15, 2007, and rendered an invoice for the project in the amount of $39,389.00.  (Noskin Aff. at ¶ 13, Ex. J).  Playmaker owes Plaintiff an outstanding balance in the amount of $39,389.00 on the Grace Lutheran Project.  Id.

13.  Playmaker received payment from its customer on the Grace Lutheran Project in the amount of $22,590.75 and deposited the payment into its operating account on or about December 3, 2007.  (RFA at ¶¶ 4-6).

14.  With respect to the Projects[2], Plaintiff and Playmaker agreed on a price, and Plaintiff delivered and installed the products and services purchased by Playmaker. (Noskin Aff. at ¶ 14.)

15.  With respect to the Projects, Playmaker failed to pay Plaintiff the agreed-upon price for the products and services delivered by Plaintiff.  (Noskin Aff. at ¶ 15).

16.  Plaintiff rendered the following itemized account statements to Playmaker for the Projects:  Invoice numbers 11954, 11958, 11975, 11990, and 12009 (the "Account Statements"). The Account Statements indicate an outstanding balance due for labor and materials in the amount of $179,640.50. ( Noskin Aff. at ¶ 16, Ex. B, D, F, H, J).

17.  Playmaker did not object to the Account Statements; Plaintiff and Playmaker agreed to the resulting balance; and Playmaker promised to pay the outstanding balance.  (Noskin Aff. at ¶ 17).

---

[2]The Coral Springs Project, Hialeah Project, Centex Project, Coconut Grove Project, and Grace Lutheran Project are collectively referred to hereinafter as the "Projects."

18. Playmaker owes Plaintiff $179,640.50 that is due with interest since the Account Statements were rendered.  (Noskin Aff. at ¶ 18).

19. At all relevant times Kerry Thiessen ("Thiessen") worked for Playmaker and then for Adventure. (DE 40, Affidavit of Kerry Thiessen at ¶ 3, 8) (hereinafter "Thiessen Aff.").

20.  Thiessen communicated with Plaintiff about the Projects, via telephone and e-mail. (Noskin Aff. at ¶5.)

21. Thiessen had no authority to sign checks or prepare them for payment.  All check writing was done by Joel B. Maxwell. (Thiessen Aff. at ¶5).

22.  On or about November 22, 2007, Steve Noskin ("Noskin"), owner and operator of Plaintiff, spoke with Thiessen on the telephone and asked him when Plaintiff would be paid for the Hialeah Project and the Coconut Grove Project.   Noskin contacted Thiessen by telephone again on November 23 and November 26.  (Noskin Aff. at ¶19.)

Plaintiff alleges the following with regard to the telephone conversations of November 22, 23, and 26, 2007:  Thiessen told Noskin that Plaintiff would be paid as soon as Playmaker received payment from the customers on those two projects, which he expected "any day." Thiessen continued to tell Noskin that Playmaker had not yet been paid by the customers and that Plaintiff would be paid as soon as Playmaker was paid.  Noskin again asked Thiessen if Playmaker had been paid for the projects, and Thiessen said that it had not.  Unbeknownst to Noskin, these representations were false.  In reality, Playmaker had already been paid in full by both customers; however, Noskin did not become aware of this until late December 2007.(Noskin Aff. at ¶ 19.)  Plaintiff started and completed the Coral Springs Project in reliance upon Thiessen's representations. (Noskin Aff. at ¶ 20)

7

In contrast, Thiessen alleges the following:  Plaintiff's allegation that Thiessen made certain statements regarding payments to Plaintiff "is not correct."   (Thiessen Aff. at ¶ 5).   The only statements Thiessen made to Plaintiff regarding payments were that a check was being sent out on or about December 2007. (Thiessen Aff. at ¶ 6).  Thiessen never stated to Plaintiff the amount, as he was not certain what the amount was until he received a check from Joel B. Maxwell. (Thiessen Aff. at ¶ 6).  Thiessen never told Plaintiff that he was being paid in full. (Thiessen Aff. at ¶ 6).

23. Plaintiff started the Coral Springs Project on or about November 26, 2007 and completed it on or about November 30, 2007.  (Noskin Aff. at ¶ 20).

24.  Plaintiff alleges the following: on or about December 7, 2007, Thiessen told Noskin that Playmaker had been paid on the Hialeah Project but not on the Coconut Grove Project. Unbeknownst to Noskin, this statement was false at the time it was made as Playmaker had already been paid for both projects.  Thiessen also stated that Playmaker was sending Plaintiff a "big check" from the Hialeah Project to cover all outstanding amounts due. (Noskin Aff. at ¶¶ 21).  In reliance upon Thiessen's representations, Plaintiff started the Showroom Project on or about December 8, 2007.  (Noskin Aff. at ¶¶ 22).

In contrast, Thiessen alleges the following:  Plaintiff's allegation that Thiessen made certain statements regarding payments to Plaintiff "is not correct."   (Thiessen Aff. at ¶ 5).   The only statements Thiessen made to Plaintiff regarding payments were that a check was being sent out on or about December 2007. (Thiessen Aff. at ¶ 6).  Thiessen never stated to Plaintiff the amount, as he was not certain what the amount was until he received a check from Joel B. Maxwell. (Thiessen Aff. at ¶ 6).  Thiessen never told Plaintiff that he was being paid in full.

(Thiessen Aff. at ¶ 6).

   25. Plaintiff started the Showroom Project on or about December 8, 2007.  (Noskin Aff. at ¶ 22).

   26. On or about December 10, 2007, Noskin notified Thiessen that Plaintiff had not received the check as promised. (Noskin Aff. at ¶ 23).

   27.  Plaintiff alleges the following with regard to the December 10, 2007 telephone conversation:  Thiessen told Noskin he would look into it and get back to him.  The next day, Thiessen told Noskin he was sending the check by overnight delivery.  In reliance upon Thiessen's assurances, Plaintiff completed the Showroom Project on December 11, 2007. (Noskin Aff. at ¶ 23).

   In contrast, Thiessen alleges the following:  Plaintiff's allegation that Thiessen made certain statements regarding payments to Plaintiff "is not correct."   (Thiessen Aff. at ¶ 5).   The only statements Thiessen made to Plaintiff regarding payments were that a check was being sent out on or about December 2007. (Thiessen Aff. at ¶ 6). Joel B. Maxwell instructed Thiessen to send out the check by overnight delivery. (Thiessen Aff. at ¶ 6).

   28.  On December 12, 2007, Plaintiff received a partial payment in the amount of $27,789.60 from Playmaker. (Noskin Aff. at ¶ 24).

   29.  Plaintiff alleges the following:  Plaintiff did not receive payment of all outstanding amounts as expected.  (Noskin Aff. at ¶ 24).  Via email on December 13, 2007, Thiessen again assured Noskin that Plaintiff would be paid in full and stated that Playmaker was still waiting to receive $264,000.00 from its customers which was "past due."  (Noskin Aff. at ¶ 24). Unbeknownst to Noskin, this statement was false at the time it was made as Playmaker had

already been paid.  (Noskin Aff. at ¶ 24). In reliance upon Thiessen's assurances, Plaintiff

commenced the Grace Lutheran Project and completed it on December 15, 2007.  (Noskin Aff. at

¶ 25).

Plaintiff justifiably relied on Thiessen's representations and continued to do work on

various projects for Playmaker. (Noskin Aff. at ¶ 26).  Plaintiff would never have commenced

work on the Coral Springs Project, the Showroom Project or the Grace Lutheran Project and

would never have completed those projects had Noskin known that Playmaker had already been

paid by the customers and had the funds to pay Plaintiff but was intentionally withholding

payment to Plaintiff. (Noskin Aff. at ¶ 25, 26).

In contrast, Thiessen alleges the following:  Plaintiff's allegation that Thiessen made

certain statements regarding payments to Plaintiff "is not correct."   (Thiessen Aff. at ¶ 5).   The

only statements Thiessen made to Plaintiff regarding payments were that a check was being sent

out on or about December 2007. (Thiessen Aff. at ¶ 6).  Thiessen never stated to Plaintiff the

amount, as he was not certain what the amount was until he received a check from Joel B.

Maxwell. (Thiessen Aff. at ¶ 6).  Thiessen never told Plaintiff that he was being paid in full.

(Thiessen Aff. at ¶ 6).

30.  Playmaker ceased doing business in mid-May 2008.  See Deposition of Kerry

Thiessen dated July 10, 1008 Exhibit 5 (hereinafter "Thiessen Depo.") at 3-4.

31.  Plaintiff alleges the following:  Thiessen never told Plaintiff that Playmaker planned

to close and that a new company, Adventure Playgrounds, Inc., had been formed. (Noskin Aff. at

¶ 33).  Plaintiff would never have commenced or completed projects during this time had Noskin

known that Playmaker would be closing down.  (Noskin Aff. at ¶¶ 26, 34).  Plaintiff thought and

understood that the Showroom Project was being completed for Playmaker; however, after the project was completed, Plaintiff learned for the first time that the project was for Playmaker's recently created entity, Adventure Playgrounds, Inc. ("Adventure"). (Noskin Aff. at ¶ 12).

In contrast, Thiessen alleges the following: Plaintiff's allegation that Thiessen did not inform Noskin of the new company, Adventure Playgrounds, is "not true."  Thiessen ordered the services for the new showroom from Plaintiff and informed Noskin that a different company was being opened for doing residential retail business.  Playmaker sold commercial playgrounds, which are entirely different from the residential retail business. (Thiessen Aff. at ¶ 7).

32.  Playmaker instructed Plaintiff to send its invoice for the Showroom Project to Adventure.  (Noskin Aff. at ¶ 12).

33.  Plaintiff alleges that it never received payment of all outstanding amounts as Thiessen promised.  (Noskin Aff. at ¶ 32.)

In contrast, Thiessen alleges that he never told Plaintiff that it was being paid in full. (Thiessen Aff. at ¶ 6.)

## STANDARD OF REVIEW

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the non-moving party bears the burden of proof on an issue, the moving party may discharge its

11

burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion.  Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (citations and quotations omitted).

**DISCUSSION**

**Count III  - Breach of Contract against Playmaker**

Because the Court is sitting in diversity, Florida substantive law applies.  See, e.g., Admiral Ins. Co. v. Feit Management Co., 321 F.3d 1326, 1328 (11th Cir. 2003) ("Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result.").

Under Florida law, a breach of contract action requires three elements: a valid contract, a material breach of that contract, and damages.  See, e.g., Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999); Miller v. Nifakos, 655 So. 2d 192, 193 (Fla. 4th DCA 1995). Here, Plaintiff has establishes each of these elements with regard to five projects – the Coral

12

Springs Project, Hialeah Project, Centex Project, Coconut Grove Project, and Grace Lutheran Project (the "Projects").

Playmaker ordered goods and services from Plaintiff for each of the Projects.  (Noskin Aff. at ¶ 7, 8, 9, 10, 13). With respect to the Projects, Plaintiff and Playmaker agreed on a price, and Plaintiff delivered and installed the products and services purchased by Playmaker. (Noskin Aff. at ¶ 14).  Plaintiff rendered the following itemized account statements to Playmaker for the Projects:  Invoice numbers 11954, 11958, 11975, 11990, and 12009 (the "Account Statements").. (Noskin Aff. at ¶ 16).   The Account Statements indicate an outstanding balance due for labor and materials in the amount of $179,640.50. ( Noskin Aff. at ¶ 16, Ex. B, D, F, H, J).  Playmaker did not object to the Account Statements; Plaintiff and Playmaker agreed to the resulting balance; and Playmaker promised to pay the outstanding balance.  (Noskin Aff. at ¶ 17).  Playmaker failed to pay Plaintiff the agreed-upon price for the products and services delivered by Plaintiff. (Noskin Aff. at ¶ 15).  Playmaker owes Plaintiff $179,640.50, that is due with interest since the the Account Statements were rendered.  (Noskin Aff. at ¶ 18).

Accordingly, Plaintiff is entitled to summary judgment on Count III - breach of contract against Playmaker, in the principal amount of $179,640.50, plus prejudgment interest from the date of the Account Statements, see Summerton v. Mamele, 711 So.2d 131, 133 (Fla. 5th DCA 1998) (available remedies for breach of contract include an award of prejudgment interest); Gencor Industries, Inc. v. Fireman's Fund Ins. Co., 988 So.2d 1206, 1209 (Fla. 5th DCA 2008) (prejudgment interest typically accrues from the date of the loss or from the date on which the claim accrued), and costs.

13

**Counts I, II, IV, and V - Account Stated, Open Account, Unjust Enrichment, and Quantum Meruit against Playmaker**

Counts I, II, IV, and V set forth alternative theories by which Plaintiff seeks to recover $179,640.50 for labor and materials due under Plaintiff's invoices for work on Playmaker's projects.  Plaintiff can only recover once for the same actual damages, regardless of the number of alternative theories presented.  As the Court has already ruled that Plaintiff is entitled to summary judgment on the basis of Plaintiff's breach of contract claim (Count III), it need not address the other counts.

**Count VI - Fraudulent Inducement Against Thiessen**

Under Florida law, a fraudulent inducement claim requires proof of the following: (1) the representor made a misrepresentation of material fact; (2) the representor knew or should have known of the falsity of the statement; (3) the representor intended that the representation would induce another to rely and act on it; and (4) the plaintiff suffered injury in justifiable reliance thereupon.  Biscayne Investment Group, Ltd. v. Guarantee Management Services, Inc., 903 So. 2d 251, 255 (Fla. 3d DCA 2005).

Here, Plaintiff alleges that it started and completed three new projects for Playmaker, the Coral Springs Project, the Showroom Project, and the Grace Lutheran Project – at a loss of $122,460.70 – in justifiable reliance upon misrepresentations and omissions by Playmaker/ Adventure employee Kerry Thiessen.  Specifically, Plaintiff claims to have relied upon (1) Thiessen's misrepresentation that Playmaker had not yet been paid by the customers on the Hialeah Project or the Coconut Grove Project - when in fact it had already been paid in full; (2) Thiessen's misrepresentation that Plaintiff would be paid as soon as Playmaker received payment from its customers on those two projects – when in fact it had been paid in full but was

14

intentionally withholding payment to Plaintiff; and (3) Thiessen's omission that a new company, Adventure, had been formed and that Playmaker was closing. (Noskin Aff. at ¶ 19-26, 32, 34).

However, Thiessen's affidavit contradicts the statements in Noskin's affidavit, creating genuine issues of material fact that preclude summary judgment against Thiessen on the fraudulent inducement count.  According to Thiessen's affidavit, Plaintiff's allegation that Thiessen made certain statements regarding payments to Plaintiff "is not correct."  (Thiessen Aff. at ¶ 5).  The only statements Thiessen made to Plaintiff regarding payments were that a check was being sent out on or about December 2007.  (Thiessen Aff. at ¶ 6). Thiessen never stated to Plaintiff the amount, as he was not certain what the amount was until he received a check from Joel B. Maxwell, who instructed him to sent the check by overnight delivery. (Thiessen Aff. at ¶ 6).  Thiessen never told Plaintiff that he was being paid in full. (Thiessen Aff. at ¶ 6).  Thiessen's affidavit also contradicts Noskin's affidavit with regard to the omission Thiessen is alleged to have made to Noskin about the closing of Playmaker and the opening of Adventure.  According to Thiessen's affidavit, Plaintiff's allegation that Thiessen did not inform Noskin of the new company, Adventure Playgrounds, is "not true." (Thiessen Aff. at ¶ 7). Thiessen not only ordered the services for the new showroom from Plaintiff, but also informed Noskin that a different company was being opened for doing residential retail business. (Thiessen Aff. at ¶ 7).

Based on the foregoing, genuine issues of material fact exist as to whether Thiessen made the alleged misrepresentations and omissions to Noskin, precluding summary judgment. Accordingly, Plaintiff is not entitled to summary judgment on Count VI - fraudulent inducement against Thiessen.

15

**Conclusion**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [DE 38] is **GRANTED IN PART AND DENIED IN PART as follows:**

(1) Summary judgment is **GRANTED** as to Count III - breach of contract against Playmaker.

(2) Summary judgment is **DENIED** as to Counts I, II, IV, and V, as the damages sought shall be awarded based on the grant of summary judgment to Plaintiff on Count III.

(2) Summary judgment is **DENIED** as to Count VI - fraudulent inducement against Thiessen.

(3) Summary judgment is **DENIED** as to Counts VII, VIII, IX, X and XI because this action has been stayed as to Joel B. Maxwell and Margie Maxwell and these counts seek recovery from the Maxwells and/or are inextricably intertwined with Plaintiff's allegations against the Maxwells. (See DE 42).

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of February, 2009.

KENNETH A. MARRA
United States District Court

Copies furnished to:
all counsel of record

16